CASCADE AUTOMATIC SPRINKLER CORPORATION, Claimant, *v.* THE STATE OF NEW YORK.

(Claim No. 22060).

Court of Claims, May 1, 1933.

*Parker & Aaron* [*Charles A. Baker* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*James H. Glavin, Assistant Attorney-General,* of counsel], for the State of New York.

BARRETT, P. J. Claimant on April 12, 1928, entered into a contract with the State Department of Mental Hygiene for the installation of a heating system and the work incidental thereto in two buildings to be constructed at the Manhattan State Hospital on Wards Island, the work to be completed on or before December 31, 1928, the same date allotted the construction contractor for the completion of its work. The amount of claimant's contract was $8,725.

Claimant began operations under its contract about October 5, 1928, and on November 13, 1929, the chief engineer of the Department of Public Works, Division of Engineering, certified that claimant was entitled to the final balance due on the contract and on the same day an order was made by the secretary of the Department of Mental Hygiene approving said payment and on November 16, 1929, claimant signed a receipt for said payment amounting to the sum of $1,876.14.

This claim for the sum of $2,231.89 and interest is for the cost of furnishing temporary heat in said buildings from December 31, 1928, to May 1, 1929, claimant's contention in brief being that owing to the failure of the construction contractor to have the buildings ready for the installation of the heating system claimant was unable to complete its contract at the time specified in the contract and was thereby compelled to furnish temporary heat until May 1, 1929.

The testimony as to the causes of the delay is in conflict, the State claiming that the alleged damages were caused by claimant's own failure to progress its work and further that in any event, the State is not liable for the entire amount because claimant's

men during the time in question were not wholly engaged in the work of furnishing temporary heat but were for at least a part of the time engaged in installing the permanent equipment. Claimant has failed to establish a claim against the State and the claim must be dismissed for the following reasons:

By the execution of the receipt for the final payment which was marked " in full," claimant waived any claim for damages that it otherwise might have had. The contract by article 26 thereof provided in part as follows: " The making and acceptance of the final payment shall constitute a waiver of all claims by the State, otherwise than under articles 16 and 28 of these conditions or under requirements of the specifications, and of claims by the contractor except as provided under article 23."

On May 20, 1929, claimant wrote the State Engineer calling attention to the delay in its work caused by the failure of the construction contractor to progress its work and on May 29, 1929, sent the engineer a detailed statement of the expense claimed to have been incurred thereby in the sum of $2,193.49. On June 20, 1929, the engineer replied to the letter of May 29, 1929. Notwithstanding this refusal, claimant on November 16, 1929, without protest or reservation, accepted the final payment and executed a final receipt in full therefor.

Claimant contends that the paragraph of article 26 of the contract above quoted must be construed with the third paragraph of the article, to the effect that final certificate should not be issued until all accounts for changes have been rendered, agreed to and made a part of such certificate and argues therefrom that the claims waived are only those for changes that have not been presented and included in the certificate. But the language of the quoted paragraph is " All claims by the contractor except as provided in Article 23." Said article 23 refers to changes in the contract work and provides in substance that if an agreement as to the value thereof is not reached, the Comptroller may proceed with the work and the right to establish a claim therefor is not thereby invalidated. Such a claim is not waived under article 26, but with that exception we think the meaning of the contract provision quoted is clear and that the waiver includes such a claim as the one herein under consideration and which formed the basis of the dispute already referred to. *Weeks* v. *Rector, etc., of Trinity Church* (56 App. Div. 195) and *Mance* v. *Hossington* (205 N. Y. 33) are not in point as there were no similar contract provisions involved.

Article 36 of the general conditions of the contract reads in part as follows: " No charges or claim for damages shall be made

by the Contractor, under the provisions of this Article, for any delays or hindrances, from any cause whatsoever, during the progress of any portion of the work embraced in this contract. Such delays or hindrances shall be compensated for under the provisions of Article 33."

Article 33 of the general conditions of the contract reads in part as follows: " If the Contractor be delayed in the completion of the work by any act or neglect of the State, or by changes ordered in the work, or by any cause which the Architect shall deem to justify the delay as being beyond the Contractor's control, then the time of completion shall be extended for such reasonable time as the Architect may decide."

Claimant contends that said paragraph of article 36 of the contract above quoted is meaningless in that there is no provision or procedure for the making of a claim. Article 36 is entitled " Damages," and while in itself it does not provide for such procedure, it refers to article 33 for compensation for " delays or hindrances," which article provides for such compensation by an extension of time for the completion of the work.

The articles read together completely provide for compensation for such damages.

In *Waples* v. *State of New York* (178 App. Div. 357) it is held that a substantially similar provision in the contract did not protect the State from liability for damages caused by the State's active interference with the work under the contract. This interpretation of the meaning of such clause has been followed in subsequent decisions of this court. In *Barr & Co., Inc.,* v. *State of New York* (127 Misc. 75) the facts were almost identical with those of this claim. There, claimant's contract was to furnish material and labor for installing heating work in buildings to be erected by another contractor. Both claimant's contract and that of the building contractor were to be completed at the same time. Due to the failure of the building contractor to progress its work, claimant was delayed in its work but it was held that such delay was not caused by the active interference of the State and the claim was dismissed.

In *Mack* v. *State of New York* (122 Misc. 86; affd., 211 App. Div. 825) it was held that such a contract provision was a bar to recovery for such damages not caused by the active interference of the State.

We feel that these cases are controlling herein and that the delays and hindrances complained of were not the result of active interference upon the part of the State.

Claimant also says that the receipt is not based upon a proper

certificate in that the architect and not the engineer should have certified to the payment, but the certificate and payment thereon were accepted without protest or objection by claimant and it is bound thereby.

At the time of the passage of chapter 694 of the Laws of 1931, under which this claim was filed, there was, therefore, no legal liability upon the part of the State, and so far as the existence of a moral obligation resting upon the State, we quote from the opinion in *Barr & Co., Inc.*, v. *State of New York* (*supra*) where it is said: " Without the benefit of the act, claimant had no valid claim against the State which had fully met every obligation of the contract which it had assumed. The act seeks to impose upon the State the consequences of acts and omissions, not of the State, but of another contractor, by providing for the payment to claimant of additional compensation equal to the amount whereby the cost of performing its work has been increased by reason of default of the building contractor.

" There is no moral obligation resting upon the State to pay this extra compensation and its payment would be a gratuity forbidden by the Constitution. (*Gordon* v. *State*, 233 N. Y. 1; *People* v. *Westchester County National Bank*, 231 id. 465.) "

For the reasons stated, the claim must be dismissed upon the merits.

ACKERSON, J., concurs.