NORCROSS v. WILLS.

(Supreme Court, Appellate Division, First Department. February 5, 1909.)

1. CONTRACTS (§ 303*)—IMPLIED OBLIGATIONS.
    Each party to a contract is under an implied obligation to do all that he reasonably can to enable the other party to perform his contract,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and a party who directly or through the default of his agent fails so to do is liable for the damages sustained by the other party.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1430–1432; Dec. Dig. § 303.*]

2. CONTRACTS (§ 210*)—CONSTRUCTION.

A contract between a contractor for the erection of a house and a subcontractor provided that the subcontractor would under the direction of architects "acting for the purpose of this contract as agents of the owner" provide materials and perform the work, and that the architects should furnish to the subcontractor such drawings as might be necessary. The contract fixed a time for performance, and provided for a stipulated penalty for delay, and declared that, should the subcontractor be delayed by the contractor or the architects, the time fixed for the completion of the work should be extended. *Held*, that the contractor was not liable for the damages sustained by the subcontractor because of the delay of the architects in supplying necessary drawings to enable him to do the work; the only compensation for the subcontractor being the extension of time for completion.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 210.*]

Appeal from Trial Term, New York County.

Action by Orlando W. Norcross, doing business under the firm name of Norcross Bros., against Charles T. Wills. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

John C. Wait, for appellant.
Robert Thorne, for respondent.

SCOTT, J. The defendant was the general contractor for the erection of a house in the city of New York for Andrew Carnegie, for which he was to receive a stated fixed price. He made a subcontract with plaintiff to quarry, cut, and furnish granite. The architects and agents for Carnegie were a certain firm of architects. They were to furnish the plans for the work to be done under both the general contract between the defendant and Carnegie, and the subcontract between plaintiff and defendant, and all work under either contract was to be subject to their inspection, approval and acceptance. The plaintiff has recovered judgment for a sum admitted to be due him. He appeals, however, because the trial court refused to submit to the jury or permit a recovery for a claim for damages resulting from the delay of the architects in furnishing detailed plans necessary to be had before the required granite could be quarried. His claim in this regard is that, although he constantly requested that plans be furnished him, they were unreasonably delayed, and that in consequence he was put to much additional expense in keeping his quarry open, in loss of interest, in increase in the rate of wages, and the like. For the purposes of this appeal we must assume that the plans were unreasonably delayed, and that the plaintiff suffered some damage thereby.

The question is whether the defendant is liable for such damages. To determine this question, it is necessary to consider the contract between the parties read in the light of the surrounding circumstances.

The most important of such circumstances is the fact which is made apparent by the contract, and by the complaint and evidence in the case, and is not disputed, that when the parties entered into this contract plaintiff knew that Carnegie, and not defendant, was the owner of the house, and that defendant was merely the general contractor with the owner. This is important because it bears upon the agency of the architects, to whose default plaintiff attributes his loss. The contract is stated to be upon a printed form in common use by defendant in his business. By its first clause the party of the first part (plaintiff) agrees that he will, "under the direction and to the satisfaction of Messrs. Babb, Cook & Willard, architects, acting for the purposes of this contract as agents of the owner," provide the materials and perform all the work mentioned in the specifications and' shown on the drawings prepared by the said architects. The second clause reads as follows:

"The architects shall furnish to the party of the first part such further drawings or explanations as may be necessary to detail and illustrate the work to be done, and the party of the first part shall conform to the same as part of this contract so far as they may be consistent with the original drawings and plans referred to and identified as provided in art. 1."

It was the apparent intention of the contract that reasonably complete drawings should accompany the contract, leaving only additional or explanatory drawings to be furnished under the second clause. It appeared in evidence, however, that, while some drawings did accompany the contract, they were not sufficient either as to detail or in scale to constitute working drawings from which the granite could be quarried.

The delay complained of was in furnishing such detailed drawings on the proper scale. The appellant has called our attention to a number of cases in which there has been applied to building contracts the familiar rule that there is in every contract an implied obligation on each contracting party to do all that he reasonably can do to enable the other party to perform his contract, and that for a failure so to do either directly or by the default of his servants or agents the party so failing may be held to respond in damages. If the architects whose default is said to have caused the damages were defendant's agents, or if the defendant assumed responsibility for their acts, he might be held liable under the rule stated. As we read the contract, however, the architects were not created defendant's agents, and he did not assume responsibility for them. They are expressly described as "acting for the purposes of this contract as agents for the owner," and, as has been said, plaintiff knew perfectly well that the owner was Carnegie, and that defendant was merely a contractor with the owner. Plaintiff, therefore, distinctly and specifically agreed to perform his work under the direction and to the satisfaction of Carnegie's agents. The designation of the architects as "agents of the owner" was expressly declared to be "for the purposes of this contract," which means for all of its purposes. When, therefore, the second clause provided that the architects should furnish further drawings or explanations, it was equivalent to saying that the owner's agent would furnish them. Plain-

tiff in effect agreed to do certain work for defendant according to plans and specifications to be furnished by a third party, to wit, the owner through his agents the architects, and to look to that third party's agents for such plans as he might from time to time require. If this leaves him in a position where he could not recover from any one his damages in case of delay in furnishing the plans it is the result of the particular form of contract which he signed. We are unable to perceive how the contract can be so construed as to make the architects the agents of defendant, or to render the latter liable for the architects' default. The contract provides, as between the parties to it, for compensation for delay on the part of the architects. The sixth clause of the contract fixes a time for its performance and provides for a stipulated penalty of $25 per day for delay in completion of the work. The seventh clause provides that "should the party of the first part (plaintiff) be obstructed or delayed in the prosecution or completion of the work by the act, neglect, delay or default of the party of the second part (defendant), or the architects, or of any other contractor employed by the party of the second part upon the work," etc., the time fixed for the completion of the work shall be correspondingly extended. While this clause might not furnish an exclusive rule of compensation in case of willful or unreasonable interference with or obstruction of the work by defendant or his agents, or even by one of the subcontractors, yet as the architects were neither agents nor subcontractors of defendant, and he was answerable for their default only in so far as he agreed to be so answerable, we consider that this clause provided for the only compensation as between plaintiff and defendant, to which the former became entitled by reason of the architects' default. No other question in the case seems to require discussion.

The judgment must be affirmed, with costs to the respondent. All concur.